```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GARY LA BARBERA, LAWRENCE KUDLA, THOMAS
GESUALDI, PAUL GATTUS, THEODORE KING,
CHESTER BROMAN, FRANK FINKEL, and JOSEPH
FERRARA, as Trustees and Fiduciaries of the Local 282
Welfare Trust Fund, the Local 282 Pension Trust Fund,
the Local 282 Annuity Trust Fund, the Local 282 Job
Training Trust Fund, and the Local 282 Vacation and
Sick Leave Trust Fund,
                                                          REPORT AND
                                                          RECOMMENDATION
                          Plaintiffs,
                                                          CV 03-6076 (ENV) (ETB)
     -against-

LES SUB-SURFACE PLUMBING, INC. and
LES FISCHER CONTRACTING CORP.,

                          Defendants.
------------------------------------------------------------------------X
```

TO THE HONORABLE ERIC N. VITALIANO, UNITED STATES DISTRICT JUDGE:

The plaintiffs, Gary La Barbera, Lawrence Kudla, Thomas Gesualdi, Paul Gattus, Theodore King, Chester Broman, Frank Finkel, and Joseph Ferrara (collectively, the "Trustees"), as trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Funds (collectively, the "Funds"), have brought this ERISA action against the defendant corporations, LES Sub-Surface Plumbing, Inc. ("LES Sub-Surface") and Les Fischer Contracting Corp. ("Les Fischer Contracting"), seeking to recover union benefit plan contributions that LES Sub-Surface and Les Fischer Contracting were obligated to pay under the terms of a collective bargaining agreement.

## BACKGROUND

The complaint in this action was filed on December 2, 2003. In their complaint, the Trustees alleged that the defendant LES Sub-Surface was bound by a collective bargaining

1

agreement ("CBA") with Local 282 for the New York City Heavy Construction and Excavating Industry which governs rates of pay, wages, hours of employment and condition of work of Union members employed by LES Sub-Surface. (Compl. ¶ 2, ¶ 10.) The complaint further alleges that LES Sub-Surface was a signatory to the CBA for the period from July 1, 1996 through June 30, 1999, and that LES Sub-Surface manifested its intent to be a party to and bound by successor CBAs by its submission of remittance reports through at least February 2002. (Id. ¶ 10.) Pursuant to the CBA, LES Sub-Surface is required to file certain employer contribution reports with the Funds. (Id. ¶ 25.) LES Sub-Surface is also required to cooperate with the Trustees in the conduct of an audit of its books and payroll records and to furnish to the Funds such information so as to ensure compliance with the terms of the CBA. (Id. ¶ 26.) The Trustees allege that LES Sub-Surface has failed to make such contributions as required by the CBA. (Id. ¶ 16, ¶ 17.) Thus, they seek an award in the amount of the unpaid benefit contributions, plus interest, liquidated damages, and attorney's fees and costs, as provided for under the CBA. (Id. at 6-7.)

On February 22, 2005, the Clerk of the Court certified a default against the defendant. By order dated March 17, 2006, Judge Spatt entered a default judgment against the defendants, referring the matter to the undersigned for an inquest on damages and counsel fees. An inquest was conducted before the undersigned on May 11, 2006. Counsel for both the plaintiffs and defendants were present at the inquest, where counsel for the Trustees conceded that an audit of Les Fischer Contracting, completed on March 9, 2005, indicated that Les Fischer Contracting did not owe any contributions to the Trustees. Accordingly, the scope of this Report and Recommendation will be limited to the Trustees' claims against defendant LES Sub-Surface.

After a default judgment has been entered, "the court accepts as true all the facts in the complaint except those relating to damages, which must be supported by independent evidence." Federal Deposit Ins. Corp. v. Persuad, No. 90-4409, 1997 WL 139010, at *4 (E.D.N.Y. 1997). To determine the relief that should be granted, the Court has examined ERISA, the Agreements between the parties, the Trustees' statement of damages and the evidence submitted at the inquest.

## DISCUSSION

I. <u>ERISA</u>

    a. <u>Cause of Action Under ERISA</u>

Section 209 of ERISA requires an employer to maintain adequate records regarding the hours worked by its employees for whom fringe benefit contributions are required to be paid. 29 U.S.C. § 1059. Additionally, ERISA Section 515 requires every employer who enters into a collective bargaining agreement to make those contributions "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Section 502 of ERISA, 29 U.S.C. § 1132(a)(3), grants the trustees of a plan the right to bring an action in federal district court to enforce an employer's duty under Section 515. *See* <u>Benson v. Brower's Moving & Storage, Inc.</u>, 907 F.2d 310, 312-13 (2d Cir. 1990). In order to prevail on a claim pursuant to Section 515, a trustee must demonstrate: (1) the existence of a valid agreement; (2) signed knowingly by the employer; that (3) unambiguously sets forth the terms and conditions by which the employer must contribute to the benefit plan. *See* <u>Roca, et al. v. Guardian Transport Co., Inc.</u>, No. 99 Civ. 4996, 2002 WL 31082959, at *1 (S.D.N.Y. 2002).

    b. <u>Damages Under ERISA</u>

Thus, in deciding upon damages in a case brought under ERISA, the Court must look to the agreement between the parties. Trustees of such plans have a fiduciary duty to safeguard the employees' funds under the common law of trusts as well as ERISA. *See* Cent. States, S.E. and S.W. Areas Pension Fund v. Cent Transp., Inc., 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). To ensure that employers will make their contributions in a timely manner, ERISA Section 1132(g)(2) provides for additional monies to paid by delinquent employers. *See* Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, 68 F.3d 1502, 1506 (2d Cir. 1995). Section 1132(g)(2) of ERISA provides, in pertinent part:

> In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which judgment in favor of the plan is awarded, the court shall award the plan - (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of - (I) interest on the unpaid contributions, or (ii) liquidated damages provided under the plan not in excess of 20 percent ... of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2).

## II. The Inquest

At the inquest hearing on May 11, 2006, the Trustees offered into evidence the following: (1) Trust Agreement between the Funds and LES Sub-Surface, effective July 1, 1999 and updated by amendment (Pls.' Exh. A); (2) New York City Heavy Construction and Excavating Contract 2002-2006 (the "CBA") (Pls.' Exh. B); (3) Local 282 Trust Funds Receipt Detail Report for LES Sub-Surface for the period July 1, 1999 through June 30, 2002 (Pls.' Exh. B1); (4) Summary Schedule of Discrepancies and Audit for LES Sub-Surface (Pls.' Exh. E); (5) Amended Summary Schedule of Discrepancies and Interest Worksheet for LES Sub-Surface (Pls.' Exh. E1); (6) Audit for Les Fischer for the period of September 28, 2000 through

4

December 31, 2003 (Pls.' Exh. F); (7) Attorney's Billing Records (Pls.' Exh. H); and (8) Invoice from process server to plaintiffs' counsel (Pls.' Exh. J).

    a.    <u>Trust Agreement and Collective Bargaining Agreement</u>

The trust agreement states that the Trustees may at any time conduct an audit of the books and records of any employer bound by a CBA with the Union. (Pls.' Exh. A at 27-28.) In addition, pursuant to the agreement, LES Sub-Surface is contractually obligated to make timely contribution to the Funds. (<u>Id</u>. Art. 9 § 3.) Article IX, Section 3 of the agreement prescribes penalties for nonpayment of the required contribution and states:

> The failure of an Employer to pay the contributions required hereunder promptly when due shall be a violation of the Collective Bargaining Agreement between the said Employer and the Union as well as a violation of the Employer's obligations hereunder. . . In addition to any other remedies to which the parties may be entitled an Employer in default for five working days shall be obligated to pay interest, at the rate specified in Section 5-501 of the General Obligations Law of the State of New York, as the same may be amended from time to time, on the monies due to the Trustees from the first day of the month when the payment was due to the date when payment was made, together with attorney's fees, auditor's fees and liquidated damages. . . .

(<u>Id.</u>) The agreement clearly mirrors Section 1132(g)(2) of ERISA.

The CBA, in effect for the period of July 1, 2002 through June 30, 2006, signed by LES Sub-Surface on July 1, 2003, incorporates the provisions of the trust agreement. Specifically, the CBA provides: "The Trust Agreements governing the Local 282 Welfare, Pension, Annuity and Job Training Trust Funds, as they shall be amended from time to time, are hereby made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer and the Union hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreements." (Pls.' Exh. B, § 13(G).)

b. Testimony and Statement of Damages

1. Delinquent Contributions

At the inquest before the undersigned on May 11, 2006, Theresa Cody ("Ms. Cody"), Head of the Collection Department for the Local 282 Trust Fund, testified that an audit of LES Sub-Surface revealed delinquent benefit fund contributions in the amount of $22,817.59 for the period of October 2000 through December 2003. (Pls.' Exh. E.) Ms. Cody further testified that LES Sub-Surface was a signatory to the CBA which covered the period of July 1, 2002 through June 30, 2006. Ms. Cody acknowledged that LES Sub-Surface was not a signatory to a CBA for the period from July 1999 through June 2002, but testified that LES Sub-Surface was considered to be a signatory by having adopted the CBA by conduct during this period. In support of plaintiffs' argument, Ms. Cody relied on Section 1 of the trust agreement which defines "Employer" as "any Employer not presently a party to such Collective Bargaining Agreement who hereafter executes such agreement or adopts such agreement by its conduct. . ." (Pls.' Exh. A, § 1.) Ms. Cody testified that LES Sub-Surface was a signatory to a previous CBA ending in June 1999, and that LES Sub-Surface continued to make payments to the Funds for the period from July 1, 1999 through June 30, 2002. Ms. Cody's testimony concerning payments during this period is supported by plaintiffs' Exhibit B1, Local 282 Trust Funds Receipt Detail Report for LES Sub-Surface for the period July 1, 1999 through June 30, 2002, which indicates that LES Sub-Surface remitted over $564,100.00 to the Trustees during this period.

LES Sub-Surface argues that the plaintiffs' Complaint does not allege that it adopted the unsigned CBAs. ("Def.'s Opp'n," at 2-4.) However, the Complaint clearly states "The company has manifested its intent to be a party to and bound by successor collective bargaining agreements, by inter alia, its submission of remittance reports through at least February 2002 in

accordance with the terms of the agreement covering the period from July 1, 1999 through June 30, 2002." (Compl. ¶ 10.) The Second Circuit in <u>Brown v. C. Volante Corp.</u>, 194 F.3d 351 (2d Cir. 1999), held that a party's conduct may manifest an intent to adopt, or agree to, an unsigned collective bargaining agreement. In the case at bar, by submitting monthly remittance reports through at least February 2002, LES Sub-Surface manifested an intent to adopt, or agree to, the unsigned CBAs.

Furthermore, by virtue of the default judgment entered against the defendants on March 17, 2006, LES Sub-Surface is deemed to have admitted all of the allegations in the complaint. A default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability. *See* <u>Trans World Airlines, Inc. v. Hughes</u>, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). For purposes of an inquest, a court accepts as true all factual allegations in the Complaint, except those claims relating to damages. *See* <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). Indeed, where a default judgment has been entered, the courts require the plaintiff to prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. *See* <u>Levesque v. Kelly Communications, Inc.</u>, 1993 U.S. Dist. LEXIS 791, No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. 1993).

At the inquest, LES Sub-Surface was afforded the opportunity to contest the Trustees' claimed damages. The Trustees' allegation that the defendants manifested an intent to adopt the unsigned CBAs from July 1999 through June 2002, and as a signatory from July 2002 through June 2006, is deemed admitted by LES Sub-Surface and therefore the issue cannot be raised at this time.

In the Complaint, plaintiffs request "an award of unpaid contributions in such amount as is found to be due and owing, including amounts found to be due and owing for the period between commencement of this action and the entry of judgment." (Compl. 15) At the inquest on May 11, 2006 and in a letter to the Court dated May 24, 2006, the plaintiffs specifically requested delinquent contributions for the period of October 2000 through December 2003. Although *Federal Rule of Civil Procedure 54(c)* limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, it does not require a plaintiff to have demanded a sum certain in order to recover on default. <u>Ames v. Stat Fire Suppression, Inc.</u>, 227 F.R.D. 361 at *362 (E.D.N.Y. 2005). The plaintiffs submitted audit reports for the period of October 2000 through December 2003, however no additional audit reports for the period of January 2004 through the March 17, 2006, the date of default judgment, have been submitted to the Court. Since the plaintiffs have specifically requested delinquent contributions for the period of October 2000 through December 2003 on two occasions, and failed to submit proof of delinquent payments for any subsequent period, their recovery shall be limited by the amount requested for the period ending December 2003, rather than up to the date of judgment.

Accordingly, the principal amount of delinquent contributions owed to the plaintiffs is $22,817.59.

    2.    <u>Interest on Unpaid Contributions</u>

In addition to the principal amount owed, the Trustees request interest thereon in the amount of $13,062.78, calculated at the prime rate of 16%[1] per year through April 30, 2006.

---

[1] Plaintiffs' Complaint, dated December 1, 2003, requested interest on unpaid contributions at the rate of eighteen (18%) percent per annum, however at the Inquest on May 11, 2006, Plaintiffs' requested interest at the rate of sixteen (16%) percent per annum.

8

Plaintiffs argue that the 16% rate is derived from the trust agreement, which states that "an Employer in default for five working days shall be obligated to pay interest at the rate specified in Section 5-501 of the General Obligations Law of the State of New York, as the same may be amended from time to time, on the monies due to the Trustees from the first day of the month when the payment was due to the date when payment was made. . . ." (Pls.' Exh. A.Art. 9 § 3.) Plaintiffs support their argument by referring to cases primarily within the Eastern and Southern Districts of New York where courts have applied the 16% rate. (*See, e.g.,* Brown v. Sandimo Materials, Inc., CV-94-5869 (LDW), Findings of Fact and Conclusions of Law at 16 (E.D.N.Y. Feb. 2, 2000), *rev'd on other grounds*, 250 F.3d 120 (2d Cir. 2001) (where the Court applied the 16% rate); Trans World Airlines v. Hughes, 449 F.2d 51, 80-81 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) (where the Second Circuit held that pursuant to 28 U.S.C. § 1961, interest on the judgment is calculated "at the rate allowed by law" and therefore the six percent rate prevails only if "the [State Banking] Board prescribed no other maximum lending rate.").

N.Y. Gen. Oblig. Law Section 5-501 provides that the "rate of interest, as computed pursuant to this title, upon the loan or forbearance of any money...shall be six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law." N.Y. Gen. Oblig. Law § 5-501. In turn, Section 14-a of the Banking Law provides that the "maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum." N.Y. Banking Law § 14-a.

LES Sub-Surface argues that the trust agreement provides that employers pay interest at the rate set forth in N.Y. General Obligations Law Section 5-501, which is 6%. (Letter from Richard Ziskin to the undersigned, dated May 25, 2006 ("Def.'s Opp'n," at 2-4.) It further argues that Section 14-a of the Banking Law does not "prescribe" a rate, but rather that the Banking

Law merely sets a maximum. *See* King v. JCS Enterprises, 288 F. Supp. 2d 287, 288-290 (E.D.N.Y. 2003) (Young, J.) (holding that the reason the General Obligations Law refers to the Banking Law is because the Banking Board is responsible for "determining the rate at which money is readily and safely invested," in order to respond to different economic conditions.) If the Banking Law were to supercede the General Obligations Law, it would render the interest rate set forth in the General Obligations Law meaningless. Id. According to LES Sub-Surface, both laws work together such that the Banking Law works as a check on the General Obligations Law as opposed to "prescribing" a rate. *See* LaBarbera v. Adco Service Corp., No. 02-CV-5289, 2005 WL 755758 (E.D.N.Y. 2005) (Johnson, J.) (holding the Banking Law does not prescribe an interest rate, rather it sets the maximum allowable interest rate at 16%).

Although many courts in this Circuit are applying the 16% rate[2], its application would seem to render the N.Y. General Obligations Law Section 5-501 meaningless and, in the circumstances presented here, most certainly produce an inequitable result and a windfall to plaintiffs. In La Barbara v. Tile King, Inc., No. CV 04-0358 (DRH), Order (E.D.N.Y. 2005), adopting Report and Recommendation (JO) (E.D.N.Y. 2004) (noting that while plaintiffs sought a higher rate, "neither the law nor fairness requires such relief, which would constitute a windfall for the plaintiffs"). Judge Hurley applied the 6% rate.[3]

---

[2] *See, e.g.,* La Barbera v. Expo Trucking, Inc., 2006 U.S. Dist. LEXIS 61403 (E.D.N.Y. 2006); LaBarbera v. A.F.C. Enters., Inc., 402 F.Supp.2d 474, 2005 U.S. Dist. LEXIS 29140 (S.D.N.Y. 2005); LaBarbera v. Eagle Scaffolding Co., Inc., 2005 U.S. Dist. LEXIS 39043 (S.D.N.Y. 2005); LaBarbera v. Bulldog Constr., Ltd., 2005 Dist. LEXIS 32632 (E.D.N.Y. 2005); and LaBarbera v. D.T.J. Trucking, Inc., 02-CV-1689 (ADS)(WDW) (unpublished opinion) (E.D.N.Y. 2005).

[3] *See also* LaBarbera v. Italco Contracting, Inc., No. 04-CV-2189 (DRH)(WDW) (E.D.N.Y. 2006); Report & Recommendation in LaBarbera v. Ferreira Bros. Contracting Inc., 04-CV-5709 (DRH)(WDW) (E.D.N.Y. 2006); and LaBarbera v. Adco Serv. Corp., 2005 U.S. Dist. LEXIS 7208, No. 02 Civ. 5289 (SJ), 2005 WL 755758, at *2 (E.D.N.Y. 2005).

Rachlin & Co. v. Tra-Mar Inc., 33 A.D.2d 370, 308 N.Y.S.2d 153 (1st Dept. 1970) has been relied on for the proposition that N.Y. Banking Law § 14-a(1) should trump N.Y. General Obligations Law § 5-501. *See, e.g.,* Trans World Airlines, Inc. v. Hughes, supra; and LaBarbera v. A. Morrison Trucking, 2006 U.S. App. LEXIS 18414 (2d Cir. 2006)). Both Trans World and Rachlin involved the applicable interest rate under C.P.L.R. § 5004 on money judgments under New York law.

That is not the present case which, in my opinion, should be considered based on rules of contract construction. The applicable contract provision here makes reference to "the rate specified in Section 5-501 of the General Obligations Law of the State of New York," which mentions only the 6% rate. While this provision was amended in the 1960's to provide for a "maximum interest rate," which now is set at 16% in the Banking Law, the theory for application of the higher rate in the Trans World case - when the higher rate was at 7½% - was that the [Banking] Board rate should prevail because "the purpose of C.P.L.R. § 5004 was to set interest on money judgments at the going rate at the time in New York." Trans World Airlines, Inc. v. Hughes, 449 F.2d at 81. Echoing the Rachlin decision by the First Department, the Court further stated that "the purpose of amending Section 5-501(1) was to permit that rate to be responsive to economic conditions." Id. As noted above, application of the 16% rate would result in a windfall to plaintiffs. One has only to look at the current yields on U.S. Treasury bills, bonds, and CDs[4] to confirm this. *See* Bloomberg.com, marketdata, http://www.bloomberg.com/markets/rates/index.html (last visited October 3, 2006).

---

[4] U.S. Treasury bills show a current yield of 4.90 - 5.01%. Treasury bonds have a current yield of under 5%. CDs provide a maximum yield of 5.09% (two year Jumbo). Bloomberg.com, marketdata, http://www.bloomberg.com/markets/rates/index.html (last visited October 3, 2006).

In applying the higher rate - then 7½% - in <u>Rachlin</u> the court noted that given the economic conditions extant at that time (1970) "if a creditor's recovery of interest was to be limited to a rate less than the prevailing statutory rate debtors would be induced to delay payment as long as possible." <u>Rachlin & Co. v. Tra-Mar Inc.</u>, 33 A.D.2d 370 at 376. These goals have no application to the contract provision involved here. If anything, the construction urged by the plaintiffs here would further a policy that would favor recognition of the slightest breach to gain the windfall 16%.

When interpreting a collective bargaining agreement, the court should apply the customary rules of contract interpretation. <u>LaBarbera v. Plan It Constr. & Equip. Co.</u>, 179 F.Supp.2d 71, 2002 U.S. Dist. LEXIS 333 (E.D.N.Y. 2002). The main purpose of a court in interpreting a written agreement is to give effect to the parties' intent as revealed by the language set forth in the agreement. <u>Seiden Assocs. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428 (2d. Cir. 1992). "The general maxim is that a contract should be construed most strongly against the drafter." <u>United States v. Seckinger</u>, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). The contract here is drafted by the plaintiffs and where ambiguous should be construed against their interest. If Plaintiffs sought to incorporate the 16% rate they could easily have done so simply by so stating, or alternatively, by referring to the rate stated in N.Y. Banking Law § 14-a(1). They did not do so. Instead they referred to "the rate specified in Section 5-501" of the N.Y. Gen. Obligations Law (Pls.' Exh. A Art. 9 §3.) The rate specified at 5-501(1) is "six percentum per annum."

For the foregoing reasons, I recommend application of the 6% rate stated in N.Y. General Obligations Law § 5-501 and expressly referenced in the contract. According to my calculations, this amounts to interest in the sum of $4,898.54, through April 30, 3006.

3.  Liquidated Damages

Pursuant to the trust agreement and Section 502 of ERISA, 29 U.S.C. § 1132(g)(2), LES Sub-Surface is also required to pay liquidated damages in an amount equal to the greater of - (i) the amount of interest owed, or (ii) 20% of the unpaid contributions. As discussed supra, the plaintiffs are entitled to interest on the unpaid contributions in the amount of $4,898.54. On the other hand, 20% of the unpaid contributions is $4,563.52. Thus, I recommend that the plaintiffs be awarded $4,898.54 in liquidated damages.

4.  Counsel Fees and Costs

ERISA dictates that a defendant is required to pay a plan's fees and costs where the plan prevails in an action to enforce Section 1145. 29 U.S.C. § 1132(g)(2)(D). Counsel fees should be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998). Here, counsel for the Trustees has requested $24,767.50, and produced a detailed time sheet of the date, work done and hours spent on the case. (Pls.' Aff., Exh. H.)

In determining what constitutes a reasonable hourly rate, the Court must look to the prevailing rates in the community "for similar services by lawyers of reasonably comparable skill, experience and reputation." Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

A single associate did all the work on this action on behalf of plaintiffs. The hourly rates sought on behalf of the associate representing the plaintiffs in this case have been billed as follows: $250 per hour prior to December 2003, $300 per hour from January 2004 through April 2004, $320 per hour from June 2004 through May 2005, and $340 per hour from June 2005 through May 2006. The "determination of a reasonable fee award under Section 1132(g)(2)(D)

of ERISA lies within the sound discretion of the district judge." Devito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1043 (E.D.N.Y. 1993). Les Sub-Surface argues that the $300 to $340 hourly rates charged by the associate are excessive in this action. Defendant argues that the original billing rate is a reasonable rate to apply to the entire period. It bases its argument on the non-complex work involved, i.e. basically drafting a complaint and default papers and conducting the contested inquest on damages.

The fee applicant bears the burden of "producing satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiffs' counsel has not provided such evidence.

Defendant's requested hourly billing rate of $250 is more in line with the prevailing rates in the Eastern District of New York for the work of an associate, especially given the relatively simple nature of this action. Courts in this district have found similar rates to be reasonable, with recent rates varying between $200 and $275. *See* Del Turco v. Carrara Contractors, Inc., 2006 WL 1783632 at *3 (E.D.N.Y. 2006) (recommending a $200 per hour billing rate and finding the rate to be reasonable for attorneys in ERISA action); Del Turco v. G.M. Celona Ceramic Tile, 2006 WL 859310 at *5 (E.D.N.Y. 2006) (awarding $200 per hour for associates, partners, and members); Private Sanitation Union Local 813, International Brother of Teamsters v. Gaeta-Serra Associates, Inc., 2005 WL 2436194 at *2-3 (E.D.N.Y. 2005) (finding that a rate of $275 per hour for a senior associate is reasonable); Trustees of Local 807 Labor-Management Health & Pension Funds v. River Trucking and Rigging, Inc., 2005 WL 3307080 at *3 (E.D.N.Y. 2005)

(applying a rate of $200 per hour for a junior associate with approximately four years legal experience).

Therefore I find that $250 is a reasonable rate for an associate with six years of experience given the relatively simple nature of this action. I further find that the amount of time billed is reasonable given the extended duration of this action which commenced in 2003. I therefore recommend that attorney's fees in the amount of $19,500 and costs in the amount of $763.98 be awarded against defendant LES Sub-Surface.

## RECOMMENDATION

For the foregoing reasons and based on the evidence submitted, the undersigned recommends that the Trustees be awarded damages against LES Sub-Surface as follows: (1) unpaid contributions in the amount of $22,817.59; (2) interest on the unpaid contributions calculated at the rate of 6%, in the sum of $4,898.54; (3) liquidated damages in the amount of $4,898.54; and (4) counsel fees and costs in the amount of $20,263.98, for a total judgment in the sum of $52,878.65.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a)(e) and 72(b); IUE AFL-CIO Pension Fund v. Herrmanm, 9 F. 3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822 (1994); Frank v. Johnson, 968 F.2d 298 (2d Cir. 1992), cert. denied, 506 U.S. 1038 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Plaintiffs' counsel is directed to serve a copy of this report on all parties upon receipt.

SO ORDERED:

Dated: Central Islip, New York
October 19, 2006

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge